UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA DODSON,

                Plaintiff,                Civil Action No. 22-12395

v.                                        Brandy R. McMillion
                                           United States District Judge

DEPARTMENT OF                  David R. Grand
VETERANS AFFAIRS,              United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 25)**

On October 7, 2022, *pro se* plaintiff Tonya Dodson ("Dodson") commenced this action against her former employer, the Department of Veterans Affairs (the "VA"). (ECF No. 1). In her complaint, Dodson alleges that she was subjected to a hostile work environment on the basis of her sex, race, and age, and in retaliation for prior protected activity. (*Id.*). Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 30).

On January 12, 2024, the VA filed a motion for summary judgment.[1] (ECF No. 25). On February 15, 2024, Dodson filed a response to this motion, along with more than 500 pages of documents purporting to support her claims. (ECF No. 27). On February 26,

---

[1] In her response brief, Dodson argues that the VA's motion for summary judgment was untimely. (ECF No. 27, PageID.276). However, this argument is without merit, as the motion was filed on or before the dispositive motion cutoff date of January 12, 2024. (ECF No. 24).

2024, the VA filed a reply brief. (ECF No. 28). The Court heard oral argument on the VA's motion on May 20, 2024. Subsequently, the Court held a settlement conference, but unfortunately a settlement was not reached.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the VA's Motion for Summary Judgment **(ECF No. 25)** be **GRANTED**.

## II.    REPORT

### A.     Factual Background

#### 1.     *Dodson's Employment History with the VA*

Dodson was hired by the VA in approximately 2010 and was employed as a food service worker at the John D. Dingell VA Medical Center in Detroit, Michigan. (ECF No. 25-2, PageID.129). Dodson is an African American female, who was approximately 45 years old at the time of the alleged harassment of which she complains. (*Id.*, PageID.128, 130, 131).

In her role as a food service worker, Dodson's direct supervisors were Walter Alef, Donald Wright, and Michael Kuschel. (ECF No. 25-3, PageID.142). Her second-level supervisor was George Oumedian. (*Id.*). Oumedian reported to Joyce Williams-Hudson, Chief of Nutrition and Food Service at the Detroit VA Medical Center. (ECF No. 25-4, PageID.158-59).

#### 2.     *The Alleged Harassment*

Dodson alleges in her complaint that, between 2011 and 2013, she was subjected to a hostile work environment on the basis of race, sex, and age, and in retaliation for prior

2

protected activity. (ECF No. 1). Between the allegations in Dodson's complaint, her deposition testimony, and assertions she made at oral argument, it appears that she is alleging the following acts of harassment:

- On May 13, 2011, Dodson reported to Williams-Hudson that her supervisor, Walter Alef, had made a comment to her to the effect of, "You always give everyone else a hug, but you don't give me a hug when I have been giving you all this overtime."[2] (ECF No. 25-4, PageID.160). Williams-Hudson investigated this allegation and reprimanded Alef for disrespectful and intimidating language to a subordinate. (*Id.*; ECF No. 25-5). Alef also was required to undergo additional EEO training. (ECF No. 25-6, PageID.176; ECF No. 27, PageID.296).

- Dodson alleges that, on June 15, 2012, she was hanging up mops in the broom closet when her coworker, Raleigh Green, came in and "grabbed [her] butt twice." (ECF No. 25-2, PageID.132, 133). Dodson did not report this incident to Oumedian until more than one month later, on July 23, 2012, after another incident occurred between Dodson and Green and they were both "being counseled for their lack of work performance on the floor and their arguing on the floor …." (ECF No. 25-3, PageID.145). Oumedian then asked Dodson to write a report of the incident in the closet, but she refused to do so. (*Id.*, PageID.145-46). Williams-Hudson did not learn of this incident until January 2013, after Dodson filed an administrative EEO complaint. (ECF No. 25-4, PageID.162). At that time, Williams-Hudson met with Green, who denied touching Dodson. (*Id.*). Williams-Hudson also interviewed Elton Carter, who Dodson indicated had witnessed the incident, but Carter said he did not see anything. (*Id.*). After concluding her investigation, Williams-Hudson reminded Green of the VA's sexual harassment policy and instructed Dodson to immediately report any further allegations of sexual harassment directly to her. (*Id.*, PageID.163).

- On June 25, 2012, Dodson got into a verbal altercation with another coworker, William Wiggins, while working the tray line during evening meal service. (ECF No. 25-6, PageID.177). Alef told Dodson and Wiggins to get back to work, but they continued to argue. (*Id.*). Alef eventually resorted to calling the VA police to the kitchen to assist in ending the dispute. (*Id.*). Dodson admitted that she yelled back at Wiggins during this incident (ECF

---

[2] When interviewed, Alef admitted making this comment but said it was made "kind of in jest" and that Dodson never complained to him about it or otherwise indicated that she found it offensive. (ECF No. 27, PageID.295-96).

3

No. 25-2, PageID.135), and both Dodson and Wiggins received written counseling letters for their behavior (ECF No. 25-8). In addition, Williams-Hudson moved Dodson to a different shift, at her request, to separate the two employees. (ECF No. 25-4, PageID.164).

- On July 23, 2012, Dodson allegedly got into a verbal altercation with Green on the tray line. (ECF No. 1, PageID.5). Apparently, Green was loudly repeating every item Dodson failed to put on the trays (ECF No. 25-9); Dodson responded with loud profanity and walked off the tray line without notifying her supervisor (ECF No. 25-10). Both Green and Dodson received written reprimands for their conduct. (ECF No. 25-9; ECF No. 25-10). When Dodson received her reprimand from Oumedian, she complained about it. She alleges that, in response, Oumedian said something to the effect of, "That's why we don't like hiring women, because they are too emotional, and I hope I don't regret hiring you." (ECF No. 25-3, PageID.149). Oumedian denies making these comments and says that Dodson took his statements – regarding the troublesome nature of her ongoing complaints – out of context. (*Id.*). Nonetheless, when Williams-Hudson learned about Dodson's allegations – again, not until January 2013 when Dodson filed her administrative EEO complaint – she reminded Oumedian of his responsibilities as a supervisor and advised him to be "gender conscious" when speaking to employees. (ECF No. 25-4, PageID.167; ECF No. 25-11).

- On July 28, 2012, Dodson claims that supervisor Michael Kuschel "yelled and screamed" at her when she called in to request sick leave. (ECF No. 1, PageID.5). She also alleges she was charged with being AWOL on July 29 and 30, 2012. (*Id.*). However, Kuschel denied yelling or screaming at Dodson when she called in to request sick leave on July 28 (ECF No. 25-12, PageID.192), and time records show that Dodson eventually received her approved sick leave those days and was not charged with being AWOL (ECF No. 25-13; ECF 25-4, PageID.168).

- In November 2012, Dodson was placed on light duty due to an injury sustained in a car accident. (*Id.*, PageID.170). Dodson alleges that, on November 16, 2012, Wiggins "came up and looked at her a little different" (*Id.*, PageID.169), and that he approached her in a "threatening and hostile" manner (ECF No. 1, PageID.5). Dodson reported this incident to Williams-Hudson; she spoke to Wiggins, who denied having any contact with Dodson. (ECF No. 25-4, PageID.169). Williams-Hudson told Wiggins to avoid Dodson. (*Id.*).

- Dodson alleges that, on December 12, 2012, she requested copies of "reports of contact" she submitted to management, but these were not provided. (ECF

4

No. 1, PageID.5). According to Oumedian, when Dodson came into his office and requested copies of documents "pertaining to her EEO case," he asked her for a list of the specific things she wanted, and she never responded. (ECF No. 25-3, PageID.152). Thus, no documents were provided.

- In September 2012, the VA Medical Center Director convened an Administrative Investigation Board ("AIB") to investigate allegations of a hostile work environment within the Food and Nutrition Service Department. (ECF No. 25-14). The AIB interviewed 16 witnesses, including Dodson,[3] and, on February 11, 2013, concluded that there was a "lack of convincing evidence to support allegations of [a] hostile work environment." (ECF No. 25-15, PageID.199).

- Lastly, Dodson alleges that, in March 2013, Williams-Hudson changed her work location and "ordered her to work in the kitchen with most of the accused men." (ECF No. 1, PageID.7). Williams-Hudson testified that while Dodson was on light duty, her work location was changed to accommodate her temporary work restrictions; however, when she was medically cleared on March 15, 2013, she was returned to her normal assignment in the kitchen. (ECF No. 25-4, PageID.170). Williams-Hudson denied that this reassignment was based on Dodson's race, age, sex, or prior protected activity. (*Id.*).

In December 2013, after Dodson requested an accommodation as a result of a disability, she was reassigned to a position as a nursing assistant. (ECF No. 25-18). After initially accepting this reassignment (*Id.*, PageID.218), Dodson resigned in August 2014, indicating she could "no longer tolerate the working conditions under discrimination, harassment, and a hostile environment" (ECF No. 25-19).

    3.     *Dodson Files an EEO Complaint and Then This Lawsuit*

In February 2013, Dodson filed a formal EEO complaint, alleging that she was

---

[3] Dodson also alleges that, during the course of this investigation, AIB Chair Michelle Werner "yelled and screamed" at her. (ECF No. 1, PageID.7). Werner denies this, indicating that Dodson was uncooperative throughout the AIB process, rescheduling her testimony three times, requiring at least four interactions to review her interview transcript, and often appearing upset and angry. (ECF No. 25-16, PageID.204-06). Despite these difficulties, Werner indicated that none of her conversations with Dodson were hostile or abusive. (*Id.*, PageID.206).

5

subjected to a hostile work environment on the basis of race, sex, age, and in reprisal for prior protected activity. (ECF No. 25-20). This EEO complaint raised the same alleged incidents of harassment as outlined above. An Administrative Judge granted summary judgment, finding no discrimination, on March 5, 2018. (ECF No. 25-21). Dodson appealed, and the decision was ultimately affirmed on August 30, 2022. (*Id.*).

Dodson filed the instant lawsuit on October 7, 2022, within ninety days of the August 30, 2022 final decision.[4] In her complaint, Dodson alleges that she was subjected to a hostile work environment on the basis of sex, race, and age, and in retaliation for her prior protected activity. (ECF No. 1). The VA now moves for summary judgment, arguing that there is no genuine issue of material fact as to any of Dodson's claims.[5]

---

[4] Dodson filed a second formal EEO complaint in May 2014, alleging that she was subjected to harassment in her position as a nursing assistant, and that she was constructively discharged based on her race, sex, age, disability, and in reprisal for prior protected EEO activity. (ECF No. 25-22). The Agency found no evidence of discrimination. Dodson appealed, and the decision was affirmed on January 11, 2021. (*Id.*). To the extent Dodson is attempting to assert in this case any of the claims set forth in her second EEO complaint, she is foreclosed from doing so because she failed to timely exhaust her administrative remedies as to those claims. Specifically, a federal employee (like Dodson) must file a civil action within 90 days of receiving notice of the EEOC's final decision on appeal. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(c). Here, where the EEOC issued its final decision on Dodson's appeal relating to her second EEO complaint on January 11, 2021 (ECF No. 25-22), and Dodson did not file suit until more than a year and a half later, on October 7, 2022, she is foreclosed from asserting any of the claims raised for the first time in her second EEO complaint. *See, e.g., Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000) (courts have "strictly enforced" Title VII's 90-day time requirement).

[5] The VA also argues that summary judgment is appropriate because Dodson has not sued the proper defendant. (ECF No. 25, PageID.112). Specifically, the VA points out that Dodson filed this action against the "Department of Veterans Affairs," but the only proper defendant in actions alleging employment discrimination under Title VII is "the head of the department, agency, or unit …." 42 U.S.C. § 2000e-16(c). Here, that is the Secretary of Veterans Affairs. While the VA has cited cases for the proposition that the Sixth Circuit has "dismissed Title VII actions naming the wrong defendant" (ECF No. 25, PageID.112), the Court declines to grant summary judgment on

6

### B. Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact

---

that basis where Dodson is proceeding *pro se* and could easily have amended her complaint to name the proper defendant had the VA timely raised this issue.

will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### C. Analysis

#### 1. General Legal Standards

As set forth above, Dodson alleges that she was subjected to a hostile work environment on the basis of sex, race, age, and in retaliation for prior protected EEO activity. (ECF No. 25-2, PageID.131). In order to make out a hostile work environment claim, Dodson must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected class; (4) the harassment created a work environment that unreasonably interfered with her work performance; and (5) the employer either knew or should have known about the harassment and failed to take corrective actions. *See Wyatt v. Nissan North Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021). Similarly, to establish a hostile work environment claim based on retaliation, Dodson must show that (1) she engaged in protected activity; (2) the defendant knew about her protected activity; (3) she was subjected to severe or pervasive retaliatory harassment; and (4) the protected activity was causally connected to the harassment. *See*

8

*Khamati v. Sec'y of Dep't of the Treasury.*, 557 F. App'x 434, 443 (6th Cir. 2014). Considering the record evidence in light of these legal standards, summary judgment is warranted in Defendant's favor.

### 2. Most All of the Alleged Harassment Was Not Based on a Protected Class or Activity

As the VA points out, Title VII is not a "general civility code"; rather, it prohibits discrimination based only on the specific protected classes enumerated in that statute. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also* 42 U.S.C. § 2000e-16(a). Thus, harassment is actionable only if an employee "would not have been the object of harassment" but for his or her protected status. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000); *see also Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011) (applying standard in context of race-based harassment). Courts "will only consider those attributes of the work environment that arise from the plaintiff's protected status or performance of protected activities." *Khamati*, 557 F. App'x at 444; *see also Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002) (noting that "an employee must demonstrate that the allegedly harassing conduct was motivated by a bias towards the employee's protected class").

Here, Dodson has failed to show that the vast majority of the alleged harassment was motivated by her membership in a protected class or any prior protected activity.[6] For

---

[6] Only three of the alleged incidents are even arguably based on Dodson's sex: (1) Alef's comment in May 2011 that "You always give everyone else a hug, but you don't give me a hug when I have been giving you all of this overtime"; (2) Dodson's allegation that Green grabbed her butt twice in June 2012; and (3) Oumedian's alleged comment in July 2012 that, "That's why we don't like hiring women, because they are too emotional." These incidents – which are not linked in any

9

example, Dodson testified that she is not sure whether her verbal altercation with Wiggins on the tray line had anything to do with her sex; she believes it was sex-based only because Wiggins "knew [she] was a female" and that she was "weaker." (ECF No. 25-2, PageID.136). Similarly, with respect to the July 2012 incident when Dodson allegedly got "yelled at" by Green, she believes this was based on sex because she was "crying" and "weak" and he called her mother a "bitch." (*Id.*, PageID.137). Likewise, Dodson has offered no evidence that Kuschel or Werner yelled at her *because of her sex*. Indeed, when asked why she believes Kuschel's yelling was sex-based, Dodson said only "[b]ecause that's what I believe." (*Id.*, PageID.138).

Moreover, Dodson has come forward with no evidence that any of these incidents were based on another protected status (race, age, or prior protected activity). Indeed, her altercations with Wiggins and Green are best characterized as general work-related disagreements; she described Wiggins as "an angry type of guy" who "would just blow up for no reason" and admitted Green had a temper and had problems working with *all* employees. (*Id.*, PageID.134, 137). Additionally, Dodson admitted that she does not believe either Kuschel or Werner yelled at her because of her race or age. (*Id.*, PageID.138, 139). Finally, Dodson has not specifically identified the protected activity that forms the basis of her retaliation claim, nor has she come forward with any evidence that the alleged harassment was motivated by such alleged protected activity.[7] Thus, aside from the three

---

way to Dodson's race, age, or prior protected EEO activity – are discussed in greater detail below. *See infra* at 11-16.

[7] In her response to the VA's motion, Dodson asserts that the protected activity to which she refers

arguably sex-related incidents discussed below, Dodson has failed to create a genuine issue of material fact that the harassment she alleges was related to her sex, race, age, or prior protected activity.

### 3. Dodson Has Failed to Establish Severe and Pervasive Harassment on the Basis of Sex

The VA concedes that three of the alleged unwelcome incidents of harassment are at least arguably based on Dodson's sex, thus satisfying the first three elements of a hostile work environment claim: (1) Alef's alleged comment in May 2011 that "You always give everyone else a hug, but you don't give me a hug when I have been giving you all of this overtime"; (2) Dodson's allegation that Green grabbed her butt twice in June 2012; and (3) Oumedian's alleged comment in July 2012 that, "That's why we don't like hiring women, because they are too emotional." (ECF No. 25, PageID.115). However, the VA argues that these incidents – even when considered in combination with the other, non-sex-related comments and actions of which Dodson complains – do not constitute sufficiently severe or pervasive harassment so as to create a hostile work environment under the law. (*Id.*, PageID.117-20).

---

is her May 2011 complaint to Williams-Hudson about Alef's inappropriate "hug" comment. (ECF No. 27, PageID.288-89). However, Dodson has come forward with no admissible evidence that the next alleged act of harassment of which she complains – i.e., the counseling letters issued to her by Alef in June and July 2012 – were issued *because of* her May 2011 complaint, which was made more than one year earlier. Such a temporal gap is simply too long to infer any causal connection to Dodson's prior complaint. *See Doe v. City of Detroit*, 3 F.4th 294, 304 (6th Cir. 2021) (finding no causation where more than five months passed between protected activity and adverse employment action); *Benison v. Ross*, 765 F.3d 649, 661 (6th Cir. 2014) (noting that "a lag time of more than six months between protected conduct and an adverse action does not permit a strong causal inference"). Moreover, any asserted causal connection is further belied by the fact that two other employees (Wiggins and Green) were issued counseling letters at the same time as Dodson.

11

The Sixth Circuit has set a "relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). As this Court recently summarized:

> A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The totality of the circumstances must be considered to determine, objectively, [whether] the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether, taken together, the reported incidents make out such a case…. Subjective beliefs about mistreatment in employment are insufficient to survive summary judgment.

*Malloy v. DeJoy*, No. 21-12094, 2023 WL 6518826, at *5 (E.D. Mich. Oct. 4, 2023) (internal citations omitted).

Evaluating Dodson's hostile environment claim under this framework, and viewing the evidence in the light most favorable to her, she has not established that the alleged harassment was sufficiently severe or pervasive so as to unreasonably interfere with her work performance by creating an intimidating, hostile, or offensive work environment. As set forth above, Dodson alleges two inappropriate comments over the course of more than a year: Alef's comment in May 2011 and Oumedian's comment in July 2012. She also alleges that Green – a co-worker – grabbed her butt twice; that other employees (Green, Wiggins, Kuschel, and Werner) yelled at her on a few occasions (she admits yelling back); that she did not receive documents she requested; and that her work location was changed once her restrictions were lifted. These events took place over the span of nearly two years.

12

In evaluating Dodson's claims that these isolated comments and/or touches created a hostile work environment, the Court must "ask whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 128 (6th Cir. 2007) (internal quotations omitted). "Courts must examine 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Hussain v. Highgate Hotels, Inc.*, 126 F. App'x 256, 268 (6th Cir. 2005)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not rise to that level." *Hussain*, 126 F. App'x at 268 (internal quotations omitted). Thus, the "severe or pervasive" prong has a subjective and an objective component. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021).

Here, Dodson has provided sufficient evidence, in the form of her own deposition testimony, that she *subjectively* perceived the actions described above to be offensive and abusive. As to the *objective* prong, however, Dodson has failed to raise a genuine issue of material fact.[8] Viewing the alleged comments and physical touches from the perspective

---

[8] In her response to the VA's motion for summary judgment, Dodson raises additional allegations of harassment and retaliation – many of which are vague and conclusory in nature – for the first time. (*E.g.*, ECF No. 27, PageID.268 ("I tried complaining to management but I felt as though it was ignored I was considered to be the 'new girl' and have to pay her dues in the kitchen before gaining any type of respect!"); *Id.* ("Mr. Wiggins had a vendetta against me for turning him in");

13

of a reasonable person in Dodson's position, a jury simply could not reasonably find that the work environment at issue was objectively hostile. Indeed, courts have found similar or more egregious conduct to be insufficient to survive summary judgment. *See, e.g., Nathan*, 992 F.3d at 565-70 (five comments – including claims that the plaintiff "needed a more supportive bra" and that her "breasts looked like they were drooping" – were insufficient to satisfy the "severe or pervasive" prong); *Clark v. United Parcel Service, Inc.,* 400 F.3d 341, 351-52 (6th Cir. 2005) (plaintiff's supervisor's vulgar jokes, placing a vibrating pager on her thigh and asking her if it felt good, and pulling her overalls after she told him she was wearing a thong did not constitute conduct pervasive enough to alter the conditions of the plaintiff's employment); *Bowman*, 220 F.3d at 464 (several incidents of harassment, including shoulder rubbing, grabbing of buttocks, and suggestive comments, were not sufficiently severe or pervasive); *McClain v. Ford Motor Co.*, No. 19-12722, 2023 WL 2410993, at *5-6 (E.D. Mich. Mar. 8, 2023) (plaintiff's allegations that a coworker "engaged in highly inappropriate conversations about sex and genitalia on a few occasions and showed Plaintiff two sexual pictures," in addition to making other sexual comments,

---

*Id.*, PageID.269 ("Mr. Alef would always make comments and innuendos that made me feel uncomfortable"); *Id.*, PageID.270 ("everyone made me feel unwelcomed and unwanted"); *Id.*, PageID.271 (discussing unnamed employee who allegedly said Dodson "did the right thing" by reporting Alef and discussing other unsupported incidents of alleged discrimination based on hearsay from unnamed employees); *Id.*, PageID.280 ("Mr. Alef reap[ed] the reward of harassing the complainant with retaliation")). Dodson also claims "[t]here are other witnesses" she will call "to testify to the verbal and sexual conduct of Mr. Green." (*Id.*, PageID.281-82). But Dodson "cannot rely on conjecture or conclusory allegations" or unsworn statements to survive summary judgment; rather, she must come forward with specific, admissible evidentiary support for her allegations, which she simply has not done. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008); *see also* Fed. R. Civ. P. 56(c) (party opposing summary judgment motion must set out specific facts showing a genuine issue for trial and must support those facts through affidavits or other competent evidence).

"merely amount to either minor workplace disputes or uncomfortable moments, but nothing that even approaches the line of being a violation of Title VII"); *Moorer v. Summit Cty. Dep't of Job & Family Servs.*, No. 5:10CV457, 2011 WL 2746098, at *1, 7 (N.D. Ohio July 14, 2011) (concluding that alleged conduct was not sufficiently severe or pervasive where plaintiff's supervisor "smacked her on the rear end" and made sexual comments).

In her response brief, Dodson also argues that the VA did not act reasonably to address her allegations of workplace harassment. (ECF No. 27, PageID.277-78). This conclusory allegation is belied by the fact that the VA disciplined Alef and required him to undergo additional EEO training after Dodson complained about his "hug" comment; counseled Oumedian to be more "gender conscious"; and convened an AIB to perform a detailed investigation of Dodson's allegations of workplace harassment. The fact that Dodson apparently believes Alef should have been removed as her supervisor (ECF No. 27, PageID.287) is of no moment, as there is no law *requiring* an employer to take such remedial action, even if it determines that an inappropriate comment was made. *See Garcia v. Beaumont Health*, No. 19-11673, 2021 WL 4951668, at *13 (E.D. Mich. Oct. 25, 2021) (noting that the issue "is not whether [the] plaintiff finds the response by [the] defendant satisfactory but whether [the] defendant's response was appropriate") (internal quotations omitted) (citing cases). More importantly, however, while the reasonableness of an employer's response may affect whether it is ultimately liable for a hostile work environment, the plaintiff must first establish that the hostile work environment exists. *See Wyatt*, 999 F.3d at 412. Here, for the reasons explained above, Dodson has failed to do so.

15

In conclusion, it is obvious from a review of the record and consideration of Dodson's statements at oral argument that she was deeply disturbed by the way she was treated by her supervisors and co-workers at the VA. The Court is sympathetic to the concerns voiced by Dodson, particularly since, in many respects, the Nutrition and Food Service Department at the VA Medical Center was often not a pleasant place to work. At the same time, however, the fact that Dodson was – and still is – deeply offended and upset by the incidents that occurred during her employment with the VA does not mean that those incidents, even when viewed collectively, rise to the level of legally actionable hostile environment workplace harassment.

Because Dodson has not come forward with sufficient admissible evidence to raise a genuine issue of material fact that the incidents of which she complains constituted a hostile work environment under the law, summary judgment in the VA's favor is appropriate.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the VA's Motion for Summary Judgment **(ECF No. 25)** be **GRANTED**.

Dated: July 15, 2024  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2024.

                        s/Eddrey O. Butts
                        EDDREY O. BUTTS
                        Case Manager